UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERTA HAWTHORNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-2362 |
| ) | |
| ST. LOUIS METROPOLITAN POLICE ) | JURY TRIAL DEMANDED |
| DEPARTMENT, ) | |
| ) | |
| THE BOARD OF POLICE ) | |
| COMMISSIONERS OF THE ST. LOUIS ) | |
| METROPOLITAN POLICE DEPT. ) | |
| ) | |
| and ) | |
| ) | |
| TODD H. EPSTEN, VINCENT ) | |
| BOMMARITO, JULIUS HUNTER, ) | |
| FRANCIS SLAY, in their individual ) | |
| capacities, ) | |
| ) | |
| and ) | |
| ) | |
| BETTYE BATTLE-TURNER, ) | |
| RICHARD GRAY, MICHAEL GERDINE, ) | |
| JERRY LEE AND FRANCIS SLAY, ) | |
| in their official capacities as the Board of ) | |
| Police Commissioners of the St. ) | |
| Louis Metropolitan Police Department, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### Parties and Jurisdiction

1. At all times relevant herein, Plaintiff, Roberta Hawthorne (hereinafter "Hawthorne") was an African-American female police officer over the age of 40 employed by the St. Louis Metropolitan Police Department since on or about August 29,

1988. She is a resident of the Eastern District of Missouri.

2. Defendant St. Louis Metropolitan Police Department (hereinafter "Department") is a metropolitan police department located in the City of St. Louis, within the Eastern District of Missouri. It is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) *et seq.* and the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq.

3. Defendant, Board of Police Commissioners (hereinafter "Board"), City of St. Louis is a public governmental body having its principle place of business in the City of St. Louis, State of Missouri. Defendant Board is vested by statute with exclusive jurisdiction over the conduct of the affairs of the Department.

4. Defendants Todd H. Epsten, Vincent Bommarito, Julius Hunter, and Francis Slay were the members of the Board at the time of Hawthorne's termination as set forth herein. They are sued in their individual capacities.

5. Defendants Bettye Battle-Turner, Richard Gray, Michael Gerdine, Jerry Lee, and Francis Slay are the current members of the Board. They are sued in their official capacities.

6. This action is brought pursuant to 42 U.S.C. § 2000(e) *et seq.*, 29 U.S.C. § 621 et seq., the 14th Amendment to the United States Constitution, and § 213.010 et seq. R.S.Mo. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, all Defendants reside in the Eastern District of Missouri and

all of the events complained of herein occurred in St. Louis, Missouri within the Eastern Division of the Eastern District of Missouri.

8. Plaintiff demands a trial by jury pursuant to Fed.R.Civ.P. 38(b).

### Facts Common to All Counts

9. As set forth above, Hawthorne began working for the Department on or about August 29, 1988 and faithfully performed the duties of a police officer until her wrongful termination by the Defendants. Hawthorne received awards and recognition for the performance of her duties as a police officer to include but not necessarily be limited to being recognized as the Officer of the Year in 2000 by the Ethical Society of Police, Inc. and being recognized as Officer of the Month for her district in November 1996, November 2000, October 2002, and November 2005.

10. Hawthorne was terminated by the Department on or about February 18, 2009 allegedly "because of her inability to perform the essential functions of a police officer." See Exhibit 1 attached hereto and incorporated by reference herein. At the time of her termination by the Department, Hawthorne had over nineteen (19) years and three (3) months of creditable service for purposes of a full retirement through the Police Retirement System of the City of St. Louis (hereinafter "System").

11. Statutorily, a police officer must have twenty (20) years of creditable service to qualify for full retirement through the System.

12. According to Special Order 4-05 issued on or about April 19, 2007, the Physical Abilities Test (hereinafter "PAT") is a test every commissioned police officer must take once a year as a condition of his/her employment. According to the policy, the failure to successfully complete the PAT "**may** result in negative employment actions, up

to an including being dropped from the rolls for 'Inability to Perform the Essential Functions of the Job'" (emphasis added).  See Exhibit 2 attached hereto and incorporated by reference herein.

       13.      Upon information and belief, neither the Department, nor the Board, can produce any document showing that the PAT is or was a policy of the Board at the time Hawthorne was terminated.

       14.      There is no legitimate business reason for requiring police officers to take the PAT because no police officer would engage in all of the activities required by the PAT when responding to a single incident and/or there are other means to determine whether a police officer is physically able to perform the essential functions of a police officer.

       15.      In fact, a member of the Board, Bettye Battle-Turner, has publicly questioned the PAT because most other police departments do not have such a test or do not fire police officers who fail such a test.  She further questioned a one-test fits all approach without consideration of an officer's age, gender, etc.

       16.      Additionally upon information and belief, the Department has previously adopted the PAT (or some variation of it) only to later discontinue it use because of concerns relating to it causing unnecessary injury to police officers.

       17.      Special Order 4-05 further provides that when an officer cannot take the PAT because on limited duty or sick-injured status at his/her designated time for taking the test, prior to returning to full duty, the officer's treating physician must certify that the officer may undergo the PAT safely.  The officer is then carried on full-duty until the first available PAT date.   See Exhibit 2.

18. On or about July 23, 2006, Hawthorne suffered a knee injury when she was working Department approved secondary employment. As a result of her knee injury, Hawthorne was unable to take the PAT on July 27, 2006 when she was scheduled to take the test.

19. Prior to Hawthorne's knee injury, she voluntarily took the PAT (because it was not then mandatory) and passed it.

20. After her knee injury on or about July 23, 2006, Hawthorne was assigned to ninety days of limited duty status until November 30, 2006 because she was not able to take the PAT.

21. After November 30, 2006, Hawthorne used her personally accrued time (e.g. vacation time, sick bonus, sick credits, holidays) until October 5, 2007, and thereafter used Family Medical Leave Act time until December 31, 2007 because after she had recovered from her July 23, 2006 knee injury, the Defendants would not let her return to full-duty status or take the PAT in violation of Department policy as set forth in more detail below.

22. On June 20, 2007, Hawthorne's treating doctor, Dr. John Sheridan, certified Hawthorne as able to return to work and specifically noted that Hawthorne was then able to take the fitness test (PAT).

23. On June 29, 2007, Dr. Sheridan signed a Medical Release Form issued by the Department, certifying Hawthorne to be in good physical health and without physical limitations or restrictions. After reviewing the components of the PAT, Dr. Sheridan again released Hawthorne to take the test.

24. Despite Dr. Sheridan's release of Hawthorne to return to work without

restriction and specifically releasing Hawthorne to take the PAT, with full knowledge of the test's components, the Department still would not permit Hawthorne to take the PAT.

25. Instead, Hawthorne was directed by the Department to take a fit for duty exam on July 3, 2007, which was performed by Dr. Leslie Tharenos, the Department's medical director. Dr. Tharenos' examination of Hawthorne lasted at most ten (10) minutes. Dr. Tharenos then ordered a functional capacity evaluation (hereinafter "FCE").

26. Hawthorne began the FCE on August 16, 2007 but was not permitted to complete it by the physical therapist conducting the FCE. This evaluation was not performed by a medical doctor.

27. After the FCE, on or about August 29, 2007, Dr. Tharenos determined that Hawthorne could not perform in a full duty capacity as a police officer at that time. As a result, Dr. Tharenos did not clear Hawthorne to take the PAT.

28. Even though Hawthorne's treating doctor voluntarily provided Dr. Tharenos with additional medical records and information to support his conclusion that Hawthorne was physically able to take the PAT, in a supplement dated October 4, 2007, Dr. Tharenos would not reassess Hawthorne's present fitness for duty, thereby preventing her from taking the PAT to establish her fitness for duty.

29. Ultimately, Hawthorne was advised by the Department of its intention to terminate her employment (less than nine months before she would be eligible for a full retirement) because of her alleged inability to perform the essential functions of a police officer, even though at that time she was notified that she would be terminated, she had not used up all of her accrued sick leave and vacation, and therefore, there was no reason to terminate her employment.

30. On or about October 29, 2008, the Defendants conducted a Board trial to determine whether Hawthorne could perform the essential functions of a police officer, even though it was the Defendants who refused to permit her to take the PAT to establish that she could perform the essential functions of a police officer.

31. On or about February 26, 2009, Hawthorne was advised by the Department (through its Human Resources Department) that the Board had ordered Hawthorne dropped from the rolls (terminated) effective February 18, 2009 due to her "inability to perform the essential functions of a Police Officer." See Exhibit 1.

32. Upon information and belief, male employees of the Department who have been unable to take and/or pass the PAT have not been dropped from the rolls like Hawthorne was.

33. Hawthorne filed timely complaints of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Missouri Commission on Human Rights (hereinafter "MCHR") on or about July 6, 2009.

34. Both the EEOC and MCHR have issued Hawthorne "right to sue" letters.

35. Hawthorne has suffered and will continue to suffer economic injury as a result of her wrongful discharge to include lost wages and other benefits of her employment, to include but not necessarily be limited to the loss of her full retirement pension.

36. As a result of her wrongful discharge, Hawthorne has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation.

## COUNT I
## PLAINTIFF'S TITLE VII AND MHRA CLAIMS AGAINST ALL DEFENDANTS BASED UPON RACE AND GENDER DISCRIMINATION

For Count I of her cause of action against all Defendants, Plaintiff Hawthorne states:

37. Hawthorne alleges and incorporates by reference as if fully set forth herein, paragraphs 1 through 36 above.

38. Hawthorne was and is a member of the protected classes: African-American and female.

39. Hawthorne was qualified for the position she held, police officer, in that she had performed the essential duties of a police officer without incident and with distinction for over nineteen (19) years, and she was meeting her employer's legitimate job expectations at the time of her discharge. Additionally, if permitted to do so, Hawthorne would have passed the PAT to establish that she was able to perform the essential duties of a police officer.

40. Hawthorne suffered an adverse employment action when she was fired by the Defendants.

41. Hawthorne was treated less favorably than other employees of the Department, particularly male employees, when she was not permitted to take the PAT and then terminated by the Defendants because she was not permitted to take the PAT.

42. Similarly situated employees outside of Hawthorne's protected class were treated differently and more favorably than Hawthorne in that they were not terminated when they were unable to take the PAT or unable to pass the PAT within the time provided for by the Department.

43. Alternatively and without waiver of the foregoing, the PAT as a condition of employment is a specific employment practice of the Defendants, even though it has never been adopted by the Board.

44. Upon information and belief, statistical evidence will show that the PAT caused Hawthorne to suffer an adverse employment action because of her membership in the protected groups: female and/or African-American.

45. There is no legitimate business reason for the PAT because Defendants are able to determine whether an officer is physically able to perform the essential duties of a police officer by other means.

46. Alternatively, and without waiver of the foregoing, even if there is a legitimate business reason for the PAT, a comparably effective alternative practice for determining whether an officer is physically able to perform the essential duties of a police officer would produce a significantly smaller adverse impact on the protected class of females and/or African-Americans.

47. The actions, policies and practices complained of herein were in violation of Hawthorne's rights secured by 42 U.S.C. §2000(e) *et seq.* and R.S.Mo. §213.010 *et seq.*

48. Hawthorne has suffered and will continue to suffer economic injury as a result of her wrongful discharge to include lost wages and other benefits of her employment, to include but not necessarily be limited to the loss of her full retirement pension.

49. As a result of her wrongful discharge, Hawthorne has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation,

embarrassment, loss of enjoyment of life, stress, and loss of professional reputation.

50. The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Hawthorne's federal statutory rights as set forth above, justifying an award of punitive damages against the individual defendants in their individual capacities.

WHEREFORE, Hawthorne prays this Court enter judgment in her favor and against the Defendants and thereafter:

A. Enjoin Defendants and it officers, agents, representatives and employees, or others acting in concert with them or under their direction and control from engaging in the policies and practices complained of herein, to wit, discriminating against employees on the basis of their race and gender, and thereafter, make Plaintiff Hawthorne whole by ordering her reinstatement with retroactive back pay, seniority, and all other privileges and benefits of her employment;

B. Alternatively, and without waiver of the foregoing, Order Defendants to make Hawthorne whole for any and all loses or damages she has suffered including lost wages and other benefits of employment, including but not necessarily limited to the loss of her full retirement pension;

C. Award damages to Hawthorne for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

D. Award Hawthorne punitive damages against the individual defendants in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

E.	Award Hawthorne the costs of this action, together with her reasonable attorneys' fees; and

F.	Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT II
## PLAINTIFF'S ADEA AND MHRA CLAIMS AGAINST ALL DEFENDANTS BASED UPON AGE DISCRIMINATION

For Count II of her cause of action against all Defendants, Plaintiff Hawthorne alleges in the alternative, but without waiver of the foregoing:

51.	Hawthorne alleges and incorporates by reference as if fully set forth herein, paragraphs 1 through 50 above.

52.	Hawthorne was and is a member of a protected class: individuals over the age of 40 in that she was 49 years of age at the time of her wrongful discharge.

53.	Hawthorne was qualified for the position she held, police officer, in that she had performed the essential duties of a police officer without incident and with distinction for over nineteen (19) years, and she was meeting her employer's legitimate job expectations at the time of her discharge. Additionally, if permitted to do so, Hawthorne would have passed the PAT to establish that she was able to perform the essential duties of a police officer.

54.	Hawthorne was not permitted to take and pass the PAT at a time when she had less than nine (9) months of creditable service before she would have qualified for a full retirement pension.

55.	Hawthorne suffered an adverse employment action when she was fired by the Defendants.

11

56. Upon information and belief, Hawthorne's replacement was substantially younger than she was at the time of her discharge.

57. Alternatively and without waiver of the foregoing, the PAT as a condition of employment is a specific employment practice of the Defendants, even though it has never been adopted by the Board.

58. Upon information and belief, statistical evidence will show that the PAT caused Hawthorne to suffer an adverse employment action because of her membership in a protected group – individuals over the age of 40.

59. There is no legitimate business reason for the PAT because Defendants are able to determine whether an officer is able to perform the essential duties of a police officer by other means.

60. Alternatively, and without waiver of the foregoing, even if there is a legitimate business reason for the PAT, a comparably effective alternative practice for determining whether an officer is physically able to perform the essential duties of a police officer would produce a significantly smaller adverse impact on the protected class of individuals over the age of 40.

61. The actions, policies and practices complained of herein were in violation of Plaintiffs' rights secured by 29 U.S.C. § 621 *et seq.* and R.S.Mo. §213.010 *et seq.*

62. Hawthorne has suffered and will continue to suffer economic injury as a result of her wrongful discharge to include lost wages and other benefits of her employment, to include but not necessarily be limited to the loss of her full retirement pension.

63. As a result of her wrongful discharge, Hawthorne has suffered and will

continue to suffer emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation.

      64.      The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Hawthorne's federal statutory rights as set forth above, justifying an award of punitive damages against the individual defendants in their individual capacities.

      WHEREFORE, Hawthorne prays this Court enter judgment in her favor and against the Defendants and thereafter:

      A.      Enjoin Defendants and it officers, agents, representatives and employees, or others acting in concert with them or under their direction and control from engaging in the policies and practices complained of herein, to wit, discriminating against employees on the basis of their age, and thereafter, make Plaintiff Hawthorne whole by ordering her reinstatement with retroactive back pay, seniority, and all other privileges and benefits of her employment;

      B.      Alternatively, and without waiver of the foregoing, Order Defendants to make Hawthorne whole for any and all loses or damages she has suffered including lost wages and other benefits of employment, including but not necessarily limited to the loss of her full retirement pension;

      C.      Award damages to Hawthorne for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

      D.      Award Hawthorne punitive damages against the individual defendants in their individual capacities in such sum as this court believes will serve to punish them

and to deter them and others from like conduct;

    E.    Award Hawthorne the costs of this action, together with her reasonable attorneys' fees; and

    F.    Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT III
## 42 U.S.C. SECTION 1983 AGAINST ALL DEFENDANTS

For Count III of her cause of action against all Defendants, Plaintiff Hawthorne alleges the following:

    65.    Hawthorne alleges and incorporates by reference as if fully set forth herein, paragraphs 1 through 64 above.

    66.    Hawthorne, as a full-time, non-probationary, commissioned officer of the Department has and had a constitutional and statutorily protected property interest in her continued employment as well as all the privileges and emoluments of her office as a police officer, and therefore, was entitled to procedural and substantive due process protections prior to her termination by the Defendants.

    67.    According to the rules, regulations, and procedures of the Department at the time of Hawthorne's termination, once Hawthorne's treating physician released her from limited duty to full duty after she had recovered from her knee injury and further certified that she could take the PAT safely, she should have been returned to full duty and scheduled to take the PAT on the first available PAT date. See Exhibit 2 attached hereto and incorporated by reference herein.

    68.    Additionally, according to the rules, regulations, and procedures of the Department, once Hawthorne was carried in a limited duty status for six (6) months, she

should have been directed to submit to a medical evaluation to include a FCE to be certified as fit for duty or unable to perform the duties of the position for which employed by a **panel of physicians** appointed through the Medical Director.  See Exhibit 3 attached hereto and incorporated by reference herein.

69. As set forth above, Hawthorne's FCE was performed by a physical therapist, not a medical doctor, and was not performed by a panel of physicians as required by the Department's rules, regulations, and procedures.

70. As set forth above, Hawthorne was not permitted to take the PAT after her treating physician, who was much more familiar with her physical condition, released her for duty and certified that she was able to take the PAT.  The Defendants' failure and refusal to permit Hawthorne to take the PAT was in violation of the Department's rules, regulations, and procedures and was arbitrary, capricious, and involved an abuse of discretion.

71. Hawthorne was terminated by the Defendants because she was not permitted to take the PAT in violation of the Department's own rules, regulations, and procedures.

72. An agency of the government must scrupulously observe the rules, regulations, and procedures which it has established.  When it does not, its actions cannot stand and the courts will strike such action down.

73. The Department's failure and refusal to comply with its own rules and regulations in terminating Hawthorne violated her due process rights secured by the 14th Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

74. Had Defendants complied with their own rules, regulations, and

procedures, Hawthorne would not have been terminated.

75. Hawthorne has suffered and will continue to suffer economic injury as a result of her wrongful discharge in violation of her due process rights to include lost wages and other benefits of her employment, to include but not necessarily be limited to the loss of her full retirement pension.

76. As a result of her wrongful discharge, Hawthorne has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation.

77. The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Hawthorne's constitutional rights as set forth above, justifying an award of punitive damages against the individual defendants in their individual capacities.

WHEREFORE, Hawthorne prays this Court enter judgment in her favor and against the Defendants and thereafter:

A. Enjoin Defendants and it officers, agents, representatives and employees, or others acting in concert with them or under their direction and control from engaging in the policies and practices complained of herein, to wit, violating the due process rights of Plaintiff, and thereafter, make Plaintiff Hawthorne whole by ordering her reinstatement with retroactive back pay, seniority, and all other privileges and benefits of her employment;

B. Alternatively, and without waiver of the foregoing, Order Defendants to make Hawthorne whole for any and all loses or damages she has suffered including lost wages and other benefits of employment, including but not necessarily limited to the loss

of her full retirement pension;

      C.      Award damages to Hawthorne for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

      D.      Award Hawthorne punitive damages against the individual defendants in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

      E.      Award Hawthorne the costs of this action, together with her reasonable attorneys' fees; and

      F.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

**PLEBAN & PETRUSKA LAW, L.L.C.**

By:      /s/ Lynette M. Petruska
C. John Pleban, #24190
Lynette M. Petruska, #41212
2010 South Big Bend Blvd.
St. Louis, Missouri 63117
(314) 645-6666 – Telephone
(314) 645-7376 – Facsimile

Attorneys for Plaintiff